IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| PROPEP, L.L.C., d/b/a § <br> PROPEP SURGICAL, L.L.C. § <br> § <br> Plaintiff, § <br> § <br> v. § <br> § <br> MEDTRONIC XOMED, INC., § <br> § <br> Defendant. § | | CIVIL ACTION NO. 1:15-cv-00356-SS |

## PLAINTIFF'S FIRST AMENDED COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, **PROPEP, L.L.C., D/B/A PROPEP SURGICAL, L.L.C.** ("ProPep" or "Plaintiff"), complaining of **MEDTRONIC XOMED, INC.** ("Medtronic" or "Defendant"), and files its Amended Complaint in order to correct/clarify Plaintiff's proper business entity name, and for cause of action would respectfully show the Court as follows:

### Parties

1. Plaintiff ProPep, L.L.C., d/b/a ProPep Surgical, L.L.C., is a limited liability company organized and existing under the laws of the State of Texas with its principal place of business located at 11614 Bee Caves Road, Suite 220, Austin, Texas 78738.

2. Defendant Medtronic is a corporation organized under Delaware law with its world headquarters located at 710 Medtronic Parkway, Minneapolis, Minnesota 55432-5604, and a principal place of business located at 6743 Southpoint Drive North, Jacksonville, Florida 32216. Defendant may be served through its agent and counsel of record who has agreed to accept service on Defendant's behalf: Kurt J. Niederluecke, Fredrikson & Byron, P.A., 200 South Sixth Street, Suite 4000, Minneapolis, Minnesota 55402.

**Jurisdiction, Venue and Removal**

3. Plaintiff filed its Original Petition in the District Courts of Travis County, Texas, pursuant to jurisdiction granted pursuant to Texas Government Code §24.007 and §24.008 and proper venue according to Texas Civil Practice & Remedies Code §15.002(a)(1) and/or §15.002(a)(4), as the county where a substantial part of the events giving rise to ProPep's claims occurred and as the county in which Plaintiff resided when the causes of action accrued. Defendant accepted service of Plaintiff's Petition on April 23, 2015.

4. On or about May 1, 2015, Defendant removed the case to this Court, asserting the parties' diversity of citizenship.

**Facts**

5. On or about May 8, 2007, ProPep filed United States Patent Application Number 11/745,505 for a "System and Method for Laparoscopic Nerve Detection;" the patent was subsequently issued as Patent Number US 8,083,685 B2 ("ProPep's patent"). Among other claims, ProPep's patent claimed a surgical system for mapping the location of an internal nerve within a body cavity, comprised of: an electrode probe adapted for insertion into the body cavity and for laparoscopic/robotic control and positioning of the probe proximate to a preselected nerve; a separate exploratory probe adapted to be disposed into the body cavity and adapted to be capable of introducing an electrical signal to the body along the presumed pathway of the preselected nerve; and an analyzer interfaced with the electrode probe that can determine the location of the nerve based upon a measurement of the strength of the electrical signal sensed by the electrode probe.

6. In March 2008, Medtronic and ProPep (collectively, "the Parties") entered into a Unilateral Confidential Agreement Protecting Third Party Confidential Information ("the

Agreement"). Medtronic signed the Agreement on March 26, 2008. ProPep signed the Agreement on March 28, 2008. The effective date of the Agreement was March 6, 2008. The Parties agreed that the laws of the State of New York would govern the Agreement.

7.     Pursuant to the Agreement, the Parties agreed that ProPep would disclose certain "Confidential Information" to Medtronic regarding ProPep's invention and development of ProPep's laparoscopic Nerve Detection System consisting of a unique electrode and monitor design plus delivery system for the intracorporeal monitoring of neurons and/or the nervous system during laparoscopic surgery, including but not limited to the intracorporeal monitoring of the neurovascular bundle during prostate surgery. The sole purpose of the confidential disclosure was Medtronic's evaluation of licensing and/or acquiring the rights to ProPep's Nerve Detection System and future business dealings between the Parties.

8.     ProPep's Confidential Information was demonstrated to Medtronic in three different robotic-assisted, laparoscopic prostatectomy procedures at Westlake Hospital in Austin, Texas on August 5, 2008, December 10, 2008 and December 22, 2008. The December 10, 2008 surgical demonstration was also broadcast live to Medtronic personnel in Jacksonville, Florida.

9.     The Confidential Information ProPep demonstrated to Medtronic included the combination of: (A) an analyzer/control unit (patient interface module) comprised of a stimulation generator, an electrical signal analyzer, a console and a monitor; (B) a bipolar laparoscopic surgical instrument for use as a cauterizing surgical instrument and as an electric stimulation device/exploratory probe to stimulate the cavernous nerves within the neurovascular bundle; (C) two electrode probes for laparoscopic/robotic control and positioning that received nerve action potential signals from the cavernous nerves within the neurovascular bundle and fed them back to the analyzer/control unit (patient interface module) for analysis and display; (D) an

introducer cannula that allowed the electrode probes to be introduced into the body cavity/laparoscopic surgical field; and (D) a switch (interface/selection module) that is connected to the electrical stimulation generator in the analyzer/control unit, a bipolar radio frequency (RF) generator in an electrosurgical unit, and the bipolar laparoscopic surgical instrument, so that the power going to the laparoscopic surgical instrument could be switched between stimulation energy and RF energy.

10. Subsequent to these demonstrations, Medtronic offered to purchase a worldwide license from ProPep for the Nerve Detection System. ProPep did not accept Medtronic's purchase offer. ProPep demanded Medtronic's return of ProPep's written and electronic Confidential Information; Medtronic complied. Obviously, the Confidential Information conveyed to Medtronic via oral information and/or physical demonstration could not be returned. Nevertheless, Medtronic was contractually bound under the Agreement to refrain from developing or acquiring products, engaging in research or development projects, or manufacturing, having made, using, commercializing, marketing, selling, offering for sale, importing, exporting, or otherwise disposing of any product or process developed as a result of using ProPep's Confidential Information.

11. Unbeknownst to ProPep, on or about April 30, 2010, Medtronic filed United States Patent Application Number 12/771,713 for an "Interface Module for Use with Nerve Monitoring and Electrosurgery" ("Medtronic's patent application"). Within Medtronic's patent application, Medtronic described and wrongfully claimed as its own proprietary features of ProPep's Nerve Detection System that had been confidentially disclosed and demonstrated to Medtronic in 2008. Medtronic engineer David C. Hacker, who viewed ProPep's surgical demonstrations in Austin, Texas on two separate occasions and who requested that ProPep live-

broadcast the December 10, 2008 demonstration to Medtronic, co-authored Medtronic's patent application. Via a patent search report, ProPep first learned of Medtronic's patent application filing on April 3, 2013.

12. On or about May 13, 2011, ProPep filed United States Patent Application Number 13/107,855 for a "Nerve Mapping Surgical System and Method of Use of Dual Function Surgical Instrument within Such System," claiming a surgical system utilizing at least one electrode probe, an analyzer/control unit (patient interface module), a bipolar laparoscopic instrument, a bipolar (RF) power supply and a switch, in which a dual function bipolar laparoscopic instrument operates as both a dissecting/cauterizing device (RF energy) and a neuro-stimulator during laparoscopic surgery. On or about December 30, 2014, ProPep's claims in this patent application were rejected as unpatentable; the rejecting patent examiner cited Medtronic's 2010 patent application as the primary reason for the rejection, even though the claims in Medtronic's patent application *had been stolen from ProPep and wrongfully used by Medtronic.*

13. In 2013, Medtronic funded and developed the protocol for a study of intra-operative nerve monitoring during robotic radical prostatectomy ("the Study"). Not coincidentally, the Study was co-authored by Sonny Yamasaki, a Medtronic science and technology advisor who attended ProPep's August 5, 2008 surgical demonstration in Austin, Texas. The Study's Principal Investigators were Ketan K. Badani, M.D., from Columbia University Medical Center and Ashutosh K. Tewari, M.D., from Weill Cornell Medical College—both doctors well-known and respected in the urological field. The Study's abstract, entitled "Intraoperative Periprostatic Nerve Action Potential Monitoring During Robotic Prostatectomy," was submitted to the American Urological Association ("AUA") in early 2014.

The abstract detailed the planned oral and video presentation of the Study at the AUA's 2014 Annual Meeting. According to the abstract, the Study's detailed nerve monitoring consisted of two bipolar ball-tip probes (electrodes) for laparoscopic/robotic control and positioning that stimulated the periprostatic nerves (cavernous nerves within the neurovascular bundle), a modified Foley catheter with ring electrodes that recorded the evoked nerve activity surrounding the prostate and mapped nerves circumferentially in the transverse plane of the prostate, mapping of nerves by reversing the stimulating and recording electrodes so that stimulation occurred from the Foley catheter ring electrodes and recording of the retrograde nerve action potential occurred from the two bipolar ball-tip probes (electrodes), and monitoring of spontaneous nerve activity during dissection with the modified Foley catheter.  This second modality, mapping of nerves by reversing the stimulating and recording electrodes, is the exact type of nerve monitoring and Confidential Information ProPep provided and demonstrated to Medtronic in 2008.

14.   On May 29, 2014, the Study's abstract was presented at the AUA's Annual Conference, with approximately 12,000 urological health care professionals in attendance.  The presentation included a video depicting the exact process ProPep demonstrated to Medtronic in 2008:  namely, a nerve monitoring system using a computer, a stimulator box, and a recording box (collectively an analyzer/patient interface module), two bipolar ball-tip probes, and an instrument equipped with electrodes (in this case, a Foley catheter equipped with metal ring electrodes).  The presentation detailed how the study's protocol included stimulating nerves inside the body cavity with the two probes and recording response with the Foley catheter electrodes, *as well as* stimulating nerves with the Foley catheter and recording response with the two probes (electrodes).  This process exactly mirrored the Confidential Information ProPep disclosed to Medtronic under protection of the Agreement.

15. Due to flaws in Medtronic's protocol, the Study's results were unfavorable. Thus, despite being successfully utilized in more than 1,000 prostatectomies to date, the patented technology and Confidential Information developed by ProPep and upon which its entire business rests, was presented to the AUA as a failure.

16. Medtronic claims its interest in utilizing ProPep's protected and patented information to develop and market a competing technological device ended there. For ProPep, however, the damage caused by Medtronic's wrongful use and disclosure continued, because the 12,000 urology professionals in attendance (all of whom existed within ProPep's potential customer base) were misinformed completely; not only were they told that the device and technology developed by ProPep and claimed by Medtronic as its own does not work, but also that nerve monitoring in prostatectomy surgery is not possible. This negative influence reaches far into the future and negatively impacts ProPep's future profits.

17. Moreover, Medtronic's wrongful usage of ProPep's protected confidential information and filing of Medtronic's patent application directly resulted in the recent rejection of ProPep's patent application for its nerve mapping surgical system and method using a dual functioned surgical instrument. This patent rejection eliminates or severely reduces any barrier to competitors copying ProPep and entering the market, undercutting ProPep's future profits and diminishing the value of ProPep's intellectual property.

### Count I:   Breach of Contract

18. ProPep repeats and re-alleges the foregoing allegations as if fully set forth herein.

19. ProPep carried out the contractual obligations it owed to Medtronic and all conditions precedent, if any, were carried out, have been met, or have been waived by the parties.

20. Medtronic breached the Agreement in multiple ways, including but not limited to:

- Utilizing the Confidential Information disclosed by ProPep to develop Medtronic's Interface Module for use with Nerve Monitoring and Electrosurgery;

- Filing its patent application for an Interface Module for use with Nerve Monitoring and Electrosurgery, which utilized and disclosed ProPep's Confidential Information to fraudulently represent to the U.S. Patent & Trademark Office that the device was unique and proprietary to Medtronic;

- Sponsoring, funding, co-authoring, and/or undertaking a scientific study of the "Intraoperative Periprostatic Nerve Action Potential Monitoring During Robotic Prostatectomy," in which Medtronic created a nerve monitoring protocol using ProPep's Confidential Information;

- Publishing its abstract and making its presentation to the AUA, which utilized and disclosed ProPep's Confidential Information and represented that the information belonged to Medtronic; and

- Utilizing ProPep's Confidential Information to present erroneous and disparaging information to ProPep's client base regarding the success and feasibility of ProPep's technology, system and device.

21. As a direct, foreseeable, and proximate result of Medtronic's breaches of contract, ProPep has suffered and will continue to suffer monetary damages.

### Count II:   Breach of Implied Covenant of Good Faith and Fair Dealing

22. The Agreement between ProPep and Medtronic contained an implied covenant of good faith and fair dealing.

23. In entering into the Agreement and demonstrating to Medtronic the Nerve Detection System ProPep designed and developed, ProPep reasonably anticipated Medtronic would refrain from utilizing the information and disclosing it or marketing it as Medtronic's own unless and until Medtronic fairly licensed or purchased the rights from ProPep.

24. Medtronic breached its implied covenant of good faith and fair dealing by acting in a manner that deprived ProPep of its right to receive benefits under the Agreement.

25. As a direct, foreseeable, and proximate result of Medtronic's breach, ProPep has suffered and will continue to suffer monetary damages.

### Count III:     Conversion

26. ProPep repeats and re-alleges the allegations of the foregoing as if fully set forth herein.

27. ProPep owned the intellectual property, Confidential Information, and Nerve Stimulation Device it developed and demonstrated to Medtronic under protection of the Agreement.

28. By using ProPep's demonstration to develop, patent, study and present its own surgical nerve monitoring interface device, Medtronic wrongfully exercised dominion over ProPep's property in defiance and to the exclusion of ProPep's rights.

29. As a direct, foreseeable, and proximate result of Medtronic's conversion, ProPep has suffered and will continue to suffer monetary damages

### Count IV:     Trade Secret Misappropriation and Unfair Competition

30. ProPep repeats and re-alleges the allegations of the foregoing as if fully set forth herein.

31. ProPep's Nerve Detection System involved a combination of (1) a switch

(interface module/selection module) that integrated an electrical stimulation generator in an analyzer/control unit with a bipolar (Radio Frequency) generator in an electrosurgical unit and a bipolar laparoscopic surgical instrument, which allowed the power going to the surgical instrument to be switched between stimulation energy and Radio Frequency energy, (2) electrode probes for laparoscopic/robotic control and positioning that received nerve action potential signals from the cavernous nerves within the neurovascular bundle and fed them back to the analyzer/control unit for analysis and display, (3) an introducer cannula to allow the electrode probes to be coupled to patient tissue in the laparoscopic surgical field, and (4) an analyzer/control unit that included a stimulation generator, a patient interface module, a console and a monitor constituted trade secrets. ProPep's systemic combination of these devices to conduct nerve stimulation via a surgical instrument through a laporoscopic field was first in the industry.

32. Medtronic knowingly acquired ProPep's trade secrets in breach of its duty of confidentiality to ProPep, then wrongfully utilized and disclosed ProPep's trade secrets for its own benefit and in unfair competition with ProPep.

33. As a direct, foreseeable, and proximate result of Medtronic's trade secret misappropriation and unfair competition, ProPep has suffered and will continue to suffer monetary damages.

## Accrual of Claims

34. ProPep repeats and re-alleges the allegations of the foregoing as if fully set forth herein.

35. Pursuant to an agreement signed by both Parties, applicable statutes of limitation were tolled from March 3, 2014 through December 4, 2014.

36. Medtronic's wrongful use and disclosure of ProPep's Confidential Information was inherently undiscoverable and objectively verifiable. ProPep first learned of Medtronic's patent application filing and wrongful use on April 3, 2013; however, Medtronic's wrongful acts did not cause legal injury to ProPep until early 2014 when the abstract of the Study funded and developed by Medtronic was presented to the AUA and/or until December 30, 2014 when Medtronic's patent application was used as grounds to reject ProPep's patent application.

37. In addition or in the alternative, Medtronic's repetitive wrongful acts and misuses of ProPep's Confidential Information constitute a continuing tort.

## Unjust Enrichment / Quantum Meruit

38. ProPep repeats and re-alleges the allegations of the foregoing as if fully set forth herein.

39. Medtronic received information and demonstration of intellectual property belonging to ProPep, then utilized that information and intellectual property to its benefit.

40. As a direct, foreseeable, and proximate result of Medtronic's inequitable conduct, ProPep has suffered and will continue to suffer monetary damages.

41. Under the equitable doctrines of unjust enrichment and quantum meruit, Medtronic should not be permitted to develop, market, study, or use ProPep's information or proprietary devices or systems, or in the alternative, Medtronic should be required to compensate ProPep for the value of said information and device and system development.

42. ProPep is entitled to restitution of, disgorgement of, and/or the imposition of a constructive trust upon, all profits, benefits, and other compensation obtained by Medtronic stemming from its unlawful conduct.

**Damages**

43. As a direct, foreseeable and proximate result of Medtronic's breach of contract, breach of implied covenant of good faith and fair dealing, conversion, trade secret misappropriation and unfair competition, ProPep has suffered and will continue to suffer monetary damages, in the form of:

- Lost profits in the past;
- Lost profits in the future;
- Clinical trial costs required to reverse the business damage caused by Medtronic;
- Lost business value; and
- Reasonable and necessary attorney's fees.

**WHEREFORE, PREMISES CONSIDERED,** PROPEP, L.L.C., D/B/A PROPEP SURGICAL, L.L.C. requests judgment and the following relief against Medtronic:

1. Judgment in favor of ProPep and against Medtronic, awarding ProPep its actual damages in an amount in excess of $30,000,000, the exact amount to be established at trial;

2. Awarding ProPep its costs, disbursements, interest, and attorneys' fees incurred in connection with this matter as provided for in the parties' contract;

3. Awarding ProPep prejudgment interest as allowed under Texas law;

4. Ordering Medtronic to cease and desist making, using, importing, marketing, selling, leasing, distributing, transferring, sublicensing and studying the technology developed by ProPep and embodied in ProPep's Nerve Detection System; and

5. Awarding ProPep any such other and further relief the Court deems just, reasonable, and equitable.

**Demand for Jury Trial**

ProPep hereby requests a trial by jury on all claims and issues available under the law.

Dated this 14th day of May, 2015.


Respectfully submitted,

_____

JOHN L. MALESOVAS
MALESOVAS LAW FIRM
Texas State Bar No. 12857300
john@malesovas.com
816 Congress Ave., Suite 1265
Austin, TX 78701
Telephone:    (512) 708-1777
Telecopier:    (512) 708-1779

and

ANTHONY L. VITULLO
FEE, SMITH, SHARP & VITULLO, LLP
Texas State Bar No. 20595500
avitullo@feesmith.com
MEREDITH C. ALLEN
Texas State Bar No. 24007009
mallen@feesmith.com
Three Galleria Tower
13155 Noel Road, Suite 1000
Dallas, Texas 75240
Telephone:    (972) 934-9100
Telecopier:    (972) 934-9200
***ATTORNEYS FOR PLAINTIFF PROPEP, L.L.C., D/B/A PROPEP SURGICAL, L.L.C.***

## CERTIFICATE OF SERVICE

       I hereby certify that on May 14, 2015, I electronically filed the foregoing *Plaintiff's First Amended Complaint* with the Clerk of the Court using the CM/ECF system which will send notification of such filing to counsel. I hereby further certify that we are also serving pro se parties with a copy of the foregoing in accordance with the Federal Rules of Civil Procedure.

Susan E. Burnett    susan.burnett@bowmanandbrooke.com; shellie.rusho@bowmanandbrooke.com

William Gordon Childs    bill.childs@bowmanandbrooke.com; tammy.yonker@bowmanandbrooke.com; reena.landwehr@bowmanandbrooke.com

Kurt J. Niederluecke    kniederluecke@fredlaw.com

Laura L. Myers    lmyers@fredlaw.com

Anthony L. Vitullo    lvitullo@feesmith.com;    mspurgeon@feesmith.com; amorgan@feesmith.com

Meredith C. Allen    mallen@feesmith.com

John Malesovas    john@malesovas.com;    marisela@malesovas.com; cathy@malesovas.com

/s/ [signature]