IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED

16 DEC -5 PM 3: 01

CLERK. U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
DEPUTY CLERK

PROPEP, L.L.C., d/b/a PROPEP SURGICAL, L.L.C.,

Plaintiff,

-vs-

Case No.  A-15-CA-356-SS

MEDTRONIC XOMED, INC.,

Defendant.

## O R D E R

BE IT REMEMBERED on this day the Court reviewed the file in the above-styled cause, and specifically Defendant Medtronic Xomed, Inc.'s (Medtronic) Motion for Patrial Reconsideration of the Court's Summary Judgment Order [#120], Plaintiff ProPep, L.L.C.'s (ProPep) Response [#121] thereto, and Medtronic's Reply [#122] in support. Having considered the documents, the governing law, and the file as a whole, the Court now enters the following opinion and order.

### Background

Although the Court previously recounted the facts of this case, a recitation of the facts is nevertheless necessary for context.

This case involves a confidentiality agreement between ProPep and Medtronic. ProPep develops nerve monitoring technology for use in laparoscopic robotic-assisted radical prostatectomies. *See* Pl.'s Resp. to Summ. J. Mot. [#87] at 2. Specifically, ProPep created a system and method of monitoring a patient's nerves during such procedures.[1] *See id.*

---

[1] According to ProPep, the most common complication of radical prostatectomy surgery is impotence and/or erectile dysfunction. *See* Def.'s Mot. Summ. J. [#68-3] Ex. 14 (Packet) at 5. ProPep therefore developed its system and method to improve the vision and dexterity of the surgeon, particularly with regard to the patient's nerves. *See*

In early 2008, ProPep approached Medtronic to discuss the sale of its system and method. *See* Pl.'s Resp. to Summ. J. Mot.[#87] at 3–4; Def.'s Mot. Summ. J. [#68] at 1. During the negotiations and due diligence, ProPep and Medtronic entered into a "Unilateral Confidentiality Agreement Protecting Third Party Confidential Information" (UCA) on March 6, 2008.[2] *See* Def.'s Mot. Summ. J. [#68] at 4. Under the UCA, the parties agreed ProPep would transfer Confidential Information to Medtronic "for the sole purpose of evaluating future business dealings between the Parties in which [ProPep] will allow Medtronic [] to use certain technologies developed by [ProPep] . . . for an agreed licensing fee (hereinafter 'Purpose of this Agreement')." Def.'s Mot. Summ. J. [#68-2] Ex. 13 (UCA) at 1.

Section 2 of the UCA defines the term "Confidential Information" to include information that at the time of disclosure was (1) tangible and (2) marked confidential. *See id.* ¶ 2. The definition also includes intangible information marked confidential at the time of disclosure as long as ProPep provided Medtronic a tangible version within 20 days of the initial disclosure. *See id.* Section 2 provides a specific provision for surgical demonstrations, explaining demonstrations will be confidential under the UCA if ProPep provides "a written statement of the date, time, place and brief description of the surgical procedure accompanied with a video recording of the procedure" to Medtronic. *Id.*

Section 3, however, describes certain exceptions to the category of Confidential Information (Section 3 Exceptions). Specifically, disclosures lose Confidential Information status if the information:

---

*id.*

(a) is well-known publicly and therefore in the public domain; or . . .

(c) can be demonstrated to have been known by Medtronic as shown by written documents dated prior to the date of this Agreement or hereafter developed by Medtronic . . . independently of any disclosure of "Confidential Information" by [ProPep]; or . . .

(e) is information that is freely disclosed by [ProPep] to any third party without obligation of confidentiality or nondisclosure . . . .

*Id.* ¶ 3.

Section 3 also explains, albeit poorly, Medtronic's duty with regard to Confidential Information: Medtronic "shall use the Confidential Information only for the Purpose of this Agreement and shall hold the disclosure of Confidential Information in confidence, disclosing it only to its employees Confidential Information only to the extent necessary to fulfill the intent and terms of this Agreement." *Id.* The UCA recognizes Medtronic will continue to work in the nerve monitoring arena and states Medtronic "has been, is, and will continue to be engaged in various research and development projects, one or more of which may relate to the Purpose of this Agreement, but not including [ProPep's] disclosed Confidential Information . . . ." *Id.* ¶ 8.

After the parties executed the UCA, ProPep shared two types of information with Medtronic: (1) three surgical demonstrations of ProPep's technology (Demonstrations); and (2) a packet of documents entitled "System and Method for Laparoscopic Nerve Detection During Radical Prostatectomy" (Packet). *See* First Am. Compl. [#9] ¶¶ 7–8; Pl.'s Resp. to Summ. J. Mot. [#87] at 4–5.

When ProPep rejected Medtronic's offer to purchase a license in May 2009, negotiations between the two entities ended; Medtronic returned "ProPep's written and electronic Confidential Information." *See* Pl.'s Resp. to Summ. J. Mot. [#87] at 7; First Am. Compl. [#9] ¶ 10. On April 30, 2010, Medtronic filed a patent application entitled "Interface Module for Use with Nerve Monitoring

and Electrosurgery" (Medtronic's Patent Application). *See* Pl.'s Resp. to Summ. J. Mot. [#87] at 9–10; Def.'s Mot. Summ. J. [#68] at 13–14.

In this suit, ProPep brought four claims against Medtronic: (1) breach of contract; (2) misappropriation of trade secrets and unfair competition; (3) breach of implied covenant of good faith and fair dealing; and (4) conversion. *See* First Am. Compl. [#9] ¶¶ 18–33. Underlying each of these claims is ProPep's allegation that Medtronic utilized Confidential Information provided by ProPep to develop Medtronic's Patent Application and conduct a clinical study. *See id.* ¶ 11; Pl.'s Resp. to Summ. J. Mot. [#87] at 9–11.

On October 6, 2016, the Court entered an order granting Medtronic's motion for summary judgment in part and denying it in part. Order of Oct. 6, 2016 [#118]. Specifically, the Court granted Medtronic's motion for summary judgment on ProPep's allegations of breach of the implied covenant of good faith and faith dealing and conversion but denied summary judgment on ProPep's claims of breach of contract and misappropriation of trade secrets. Thus, only the two later claims remain at this time. Furthermore, the Court found while ProPep had presented a genuine issue of material fact regarding whether the Packet contained Confidential Information, there was no evidence the Demonstrations were designated as Confidential Information in accordance with the UCA. Consequently, the breach of contract and misappropriation of trade secrets claims only survive to the extent ProPep alleges Medtronic used Confidential Information from the Packet for an improper purpose.

Now, Medtronic asks the court to reconsider its denial of summary judgment on the breach of contract and misappropriation of trade secrets claims. Arguing the Court relied on ProPep's inaccurate factual representations, Medtronic claims no genuine issue of material fact remains on

whether Medtronic used Confidential Information from the Packet before that information became subject to the Section 3 Exceptions. The Court addresses the merits of Medtronic's motion below.

## Analysis

### I.       Legal Standards

### A.       Reconsideration under 54(b)

Medtronic brings its motion under Federal Rule of Civil Procedure 54(b), which gives a district court discretion to "revise[] at any time before the entry of a judgment" "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties[.]" FED. R. CIV. P. 54(b). Although a district court's discretion to reconsider its orders is broad, "it is exercised rarely to avoid the perpetual reexamination of orders and the resulting burdens and delays." *Iturralde v. Shaw Grp., Inc.,* No. CIV.A. 05-330, 2012 WL 1565356, at *3 (M.D. La. May 1, 2012) (citations omitted), *aff'd*, 512 F. App'x 430 (5th Cir. 2013).

"Although the precise standard for evaluating a motion to reconsider under Rule 54(b) is unclear, whether to grant such a motion rests within the discretion of the court . . . [a]nd the standard would appear to be less exacting than that imposed by Rules 59 and 60." *Cantwell Family Tr. (1998) & Cantwell Holdings, Ltd. v. Hyten,* No. A-15-CA-414-SS, 2016 WL 1610610 at *2 (W.D. Tex. Apr. 20, 2016) (citing *Dos Santos v. Bell Helicopter Textron, Inc. Dist.*, 651 F. Supp. 2d 550, 553 (N.D. Tex. 2009)). In examining a Rule 54(b) motion to reconsider, however, "considerations similar to those under Rules 59 and 60 inform the Court's analysis." *Id.* In particular, a Court considers "whether the movant is attempting to rehash its previously made arguments or is attempting to raise an argument for the first time without justification . . . ." *Dos Santos* , 651 F. Supp. 2d at 553 (citations omitted).

**B.      Summary Judgment Standard**

As Medtronic asks the Court to revise its prior summary judgment order, the Court

revisits the standard for summary judgment. Summary judgment shall be rendered when the

pleadings, the discovery and disclosure materials on file, and any affidavits show there is no

genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of

law. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986); *Washburn v.*

*Harvey*, 504 F.3d 505, 508 (5th Cir. 2007). A dispute regarding a material fact is "genuine" if the

evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for

summary judgment, the court is required to view all inferences drawn from the factual record in

the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475

U.S. 574, 587 (1986); *Washburn*, 504 F.3d at 508. Further, a court "may not make credibility

determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v.*

*Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254–55.

Once the moving party has made an initial showing that there is no evidence to support

the nonmoving party's case, the party opposing the motion must come forward with competent

summary judgment evidence of the existence of a genuine fact issue. *Matsushita*, 475 U.S. at 586.

Mere conclusory allegations are not competent summary judgment evidence, and thus are

insufficient to defeat a motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*,

476 F.3d 337, 343 (5th Cir. 2007). Unsubstantiated assertions, improbable inferences, and

unsupported speculation are not competent summary judgment evidence. *Id.* The party opposing

summary judgment is required to identify specific evidence in the record and to articulate the

precise manner in which that evidence supports his claim. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006). Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.*

## II.    Application

Claiming ProPep has not provided any evidence specific information from the Packet was used by Medtronic before falling within the Section 3 Exceptions, Medtronic asks the Court to reconsider its denial of summary judgment. Medtronic attempts to isolate components of the ProPep system in an effort to show the components meeting Confidential Information requirements are not the components on which ProPep offers evidence of Medtronic's use. But Medtronic's argument only succeeds if there are no fact issues on what information was revealed through the Packet, what information is protected by Confidential Information status, and when Medtronic allegedly used ProPep information. As set forth below, the Court finds factual issues still exist as to what information was disclosed via the Packet, if any disclosures by ProPep lost Confidential Information status through the Section 3 Exceptions, and if Medtronic used any Confidential Information for an improper purpose. In total, Medtronic is merely attempting to rehash its previously made arguments by repackaging them. The Court finds Medtronic's second attempt at summary judgment unpersuasive and DENIES Medtronic's motion for reconsideration.

## A.    The Packet

As the Court noted in its prior order, the Packet contains a confidentiality statement, a statement of the goals of integrating ProPep and da Vinci Robotics, an introductory statement, a written explanation of ProPep's system and methods including figures and photos, a description

of the benefits of the technology, legal disclaimers, a description of similar applications, a summary of pricing and revenue, and conclusions. Order of Oct. 6, 2016 [#118] at 9. The Court previously found a genuine issue of material fact existed with regard to whether the Packet constituted Confidential Information under the UCA. *Id.* at 12.

In its motion for reconsideration, Medtronic disputes what components of its system ProPep revealed through the Packet to curtail ProPep's allegations of what Confidential Information Medtronic could have improperly used. But Medtronic does not dispute four key components were included in the Packet: (1) the process of stimulating and recording a nerve directly; (2) the possibility for adapting ProPep's system for use with Intuitive Surgical's da Vinci Robot; (3) the use of a clinical diagnostic monitor (Cadwell monitor); and (4) the optimal Cadwell monitor settings. Mot. [#120] at 4. Medtronic only disputes whether the switchbox component and the use of a bipolar instrument were disclosed in the Packet, insisting these two components were not present in the Packet. *Id.*

Nevertheless, the components whose inclusion in the Packet is undisputed are sufficient to maintain a fact issue. As discussed below, Medtronic cannot prove as a matter of law these components lost Confidential Information status before Medtronic used them. Yet, a fact issue also exists with regard to what information the Packet disclosed.[3] Specifically, with regard to the bipolar instrument, Medtronic claims that component was not disclosed in the Packet, citing only the Packet itself. Mot. [#120] at 5. As the moving party for a summary judgment motion must make the initial showing there is no evidence to support the nonmoving party's case, the Court

---

[3] ProPep does acknowledge "the only significant disclosures of the switchbox" were made orally and in the context of live surgical demonstrations attended by Medtronic's top engineers. *See* Pl.'s Supp. Letter Br. at 1–2. Thus, the Court agrees with Medtronic, the switchbox was not disclosed in the Packet.

declines to scrutinize the Packet to confirm Medtronic's claim. *See Matsushita,* 475 U.S. at 586. Moreover, without additional information, a reasonable jury could conclude the Packet contains sufficient pictures and descriptions to reveal the ProPep system uses a bipolar instrument. *See* Mot. [#120-2] Ex. A (Packet). Consequently, a fact dispute remains on what components of the ProPep system the Packet disclosed to Medtronic.

**B.    Section 3 Exceptions**

Medtronic also argues the components of the ProPep system lost Confidential Information status through the Section 3 Exceptions before Medtronic used such information. Medtronic does show ProPep made disclosures regarding direct nerve monitoring and the use of ProPep's electrode with the daVinci robot in its poster presentation and description of said presentation in a urology journal in 2007. However, this argument is not new. *See* Def.'s Mot. Summ. J. [#68] at 4–5 (arguing ProPep previously disclosed aspects of the ProPep system at 2007 conference and corresponding description published in a urology journal).

As before, ProPep claims its disclosures never reached the level required by the Section 3 Exceptions and thus, in light of Medtronic's argument, a fact issue exists on whether information from the Packet lost Confidential Information status through the Section 3 Exceptions. Resp. [#121] at 4. The Court agrees with ProPep, whether the Section 3 Exceptions apply is a question of fact for the jury to decide.

**C.    Use by Medtronic**

Finally, a genuine issue of material fact still exists on whether Medtronic impermissibly used any Confidential Information. Even assuming ProPep did publically disclose all the

components of its system in 2011,[4] ProPep has presented enough to establish a fact issue on whether Medtronic improperly used ProPep's system and method before 2011, during the research and development phase of Medtronic's own technology. For example, ProPep has provided evidence Medtronic was working on a device in monopolar form in 2006 but in 2010 filed a patent for a device in bipolar form after incorporating the bipolar aspects of ProPep's design. Aff. Resp. to Summ. J. Mot. [#88-20] Ex. 20 (McFarlin Dep. Tr.) 13:1–25, 31:1–25.

Because genuine issues of material fact remain, the Court's denial of summary judgment on ProPep's claims of breach of contract and misappropriation of trade secrets stands. The Court denies the motion for reconsideration.

## Conclusion

Accordingly,

IT IS ORDERED that Medtronic's Motion for Partial Reconsideration of the Court's Summary Judgment Order [#120] is DENIED.

SIGNED this the ___5___ day of December 2016.

_____
SAM SPARKS
UNITED STATES DISTRICT JUDGE

---

[4] Medtronic claims ProPep disclosed all components of its system at a May 2011 meeting. *See* Mot. [#120] at 8 (citing Def.'s Summ. J. Mot. [#68-2] Ex. 1 at 184:2–185:19).